IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 23-cv-002258-GPG-JPO

PEARSON AIR CONSTRUCTION, LLC,

    Plaintiff,

v.

PCL CONSTRUCTION SERVICES, INC.,

    Defendant.

## ORDER

Before the Court is Plaintiff Pearson Air Construction, LLC's (Plaintiff) Motion to Remand and Brief in Support (D. 7) (the Motion to Remand). For the reasons stated below, the Motion to Remand is GRANTED.

### I. FACTUAL BACKGROUND

#### A. The Players

Plaintiff is a limited liability company organized under Texas law (D. 1-2 at 1). As of April 18, 2023, it had two members—Pearson Mechanical, Inc. and Pearson Air Colorado, Inc.—which are incorporated in Texas and Colorado, respectively (*id.*; *see also* D. 7 at 11). Defendant PCL Construction Services, Inc. (Defendant) is a corporation incorporated in Colorado (D. 1-2 at 1).

#### B. The Game

Plaintiff "provides HVAC services and installation on construction projects in Texas and Colorado" (*id.* at 2). Plaintiff submitted a bid to perform HVAC work on a Colorado construction

1

project for which Defendant served as the general contractor (*id.* at 3). Defendant accepted Plaintiff's bid (*id.*). But according to Plaintiff, Defendant attempted to impose new terms on Plaintiff that were not discussed at the bidding stage (*id.*). For instance, Defendant sent Plaintiff a Subcontract Agreement for execution that included a different scope of work and that contained a provision obligating Plaintiff to purchase a performance and payment bond or obtain a letter of credit at Defendant's election (*id.*). Plaintiff did not agree to these new terms (*id.* at 3–4). So it refused to execute the Subcontract Agreement (*id.* at 4). Defendant, however, allegedly refused to let Plaintiff off the hook—instead, it insisted that the parties had a binding and enforceable agreement (*id.*).

Like all reasonable businesses should, Defendant attempted to negotiate with Plaintiff before the parties' dispute led to a lawsuit. On February 13, 2023, it sent Plaintiff a letter advising that Plaintiff's purported refusal to honor its bid had compelled Defendant to locate a replacement subcontractor and incur additional expenses (D. 17 at 5–6). The letter demanded that Plaintiff indemnify Defendant for these extra costs no later than February 24, 2023, lest Defendant be forced to pursue legal action (*id.*). Defendant twice extended this deadline at Plaintiff's request (first, on February 23, 2023, and again on March 24, 2023) (*id.* at 7–8). While it stalled for time, Plaintiff got its litigation ducks in a row. On March 30, 2023, it incorporated Pearson Air Colorado, Inc. in Colorado (*id.* at 26). Then, it made Pearson Air Colorado, Inc. a member of Plaintiff (before this restructuring, Plaintiff's sole member was Texas corporation Pearson Mechanical, Inc.) (D. 7 at 3). And on April 18, 2023, without giving Defendant any advance notice, Plaintiff filed the instant suit (a declaratory-judgment action) in Texas state court (D. 1-2; D. 16 at 2).

Defendant then removed this action to the United States District Court for the Northern District of Texas and filed a Motion to Dismiss Or, in the Alternative, to Transfer Venue (D. 1; D. 4). Plaintiff filed the Motion to Remand, seeking an order remanding the action back to the 96th District Court in Tarrant County, Texas (where it was originally pending) (D. 7). Before addressing the Motion to Remand, the United States District Court for the Northern District of Texas granted Defendant's request to transfer venue, and the action was transferred to the United States District Court for the District of Colorado (D. 23). Plaintiff's Motion to Remand remains pending before this Court.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "The party invoking federal jurisdiction bears the burden of establishing jurisdiction as a threshold matter." *A.L. by & through Luchsinger v. Pitts*, No. 21-CV-03481-CMA-STV, 2022 WL 3593739, at *2 (D. Colo. Aug. 23, 2022) (citing *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004)). "Moreover, there is a presumption against removal jurisdiction," *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and "[d]oubtful cases must be resolved in favor of remand." *Archuleta v. Lacuesta*, 131 F.3d 1359, 1370 (10th Cir. 1997). Relatedly, courts strictly construe removal statutes to "limit the federal court's authority." *Cellport Sys. v. Peiker Acustic GmbH & Co. KG*, 335 F. Supp. 2d 1131, 1133 (D. Colo. 2004).

Federal district courts have original jurisdiction over—*inter alia*—"all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1). Such "[d]iversity jurisdiction requires complete diversity" across party lines, meaning that "no plaintiff may be a citizen of the same state as any defendant." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). For purposes of diversity jurisdiction, "[t]he citizenship of a limited liability company is determined by the citizenship of its members, not the state in which it was formed." *Grimsey v. Loewen*, No. 2:13-CV-173-TC, 2013 WL 1907453, at *2 (D. Utah May 7, 2013); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237–38 (10th Cir. 2015) ("Supreme Court precedent makes clear that in determining the citizenship of an unincorporated association for purposes of diversity, federal courts must include all the entities' members."). A corporation, meanwhile, "shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). In the removal context, "[c]ourts generally determine diversity based on the citizenship of the parties named in the complaint." *Woods v. Ross Dress for Less, Inc.*, 833 F. App'x 754, 757 (10th Cir. 2021) (unpublished). Ordinarily, a court "evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements." *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 F. App'x 911, 913 (10th Cir.2006) (unpublished). But in some instances (for example, where a party asserts that removal is proper in view of fraudulent joinder), a reviewing court may look past the pleadings. *See id.*

4

## III.  ANALYSIS

Defendant removed on the basis of diversity jurisdiction (D. 1).  At first blush, the Motion to Remand would seem easily resolved.[1]  As a limited liability company, Plaintiff's citizenship for diversity purposes is determined by the citizenship of its members.  And its two members—entities incorporated in Texas and Colorado—are citizens of Texas and Colorado.  Accordingly, Plaintiff would appear to be a citizen of Texas and Colorado.  Defendant is a corporation incorporated in Colorado and is therefore a Colorado citizen for diversity purposes.  Because both Plaintiff and Defendant look to be Colorado citizens, they are not apparently diverse.

But Defendant urges the Court to look past the pleadings and disregard the Colorado citizenship of Peason Air Colorado, Inc., Plaintiff's Colorado member.  In Defendant's view, Plaintiff engaged in gamesmanship by creating that entity and vesting it with an interest in Plaintiff on the eve of litigation and after Defendant had alerted Plaintiff to potential claims.  In other words, Plaintiff opportunistically restructured itself so that it could beat Defendant to the punch and file suit in its preferred forum (Texas state court) without facing the prospect of removal.

The Court has no doubt that this is exactly what happened.  And indeed, Plaintiff does not even meaningfully try to deny it.  Although Plaintiff's principal submitted an affidavit vaguely asserting a few purported business justifications for creating Pearson Air Colorado, Inc., she notably offers no explanation for the *timing* of that conduct (D. 7 at 11–13).[2]  Instead, she states

---

[1] Plaintiff's initial state-court pleading specifically alleges that Plaintiff "is a limited liability company formed in Texas that is a resident of both Texas and Colorado" and that Defendant is "a Colorado corporation" (D. 1-2 at 1).

[2] Beyond that, it strikes the Court that Plaintiff's stated business objectives could be accomplished by means other than making Pearson Air Colorado, Inc. a member of Plaintiff.  In other words, while creating an affiliated entity could plausibly serve Plaintiff's stated justifications, the Court is not persuaded that Pearson Air Colorado, Inc.'s status as one of Plaintiff's equityholders would.  Specifically, Plaintiff's principal averred that "Pearson Air Colorado, Inc. was formed for the purpose of eventually spearheading [Plaintiff's] Colorado operations," that Pearson Air Colorado, Inc.

5

simply that Plaintiff "has been considering creating a separate entity specific to the Colorado market for several years" (*id.* at 12).  While Plaintiff may have been contemplating restructuring for years, the fact is that it only did so a mere three weeks before filing a lawsuit that capitalized on that restructuring scheme (and in the context of an active dispute that was heading towards litigation).  Plaintiff's failure to explain the timing of its conduct (for instance, by averring to inadvertence or coincidence, as the plaintiffs in similarly postured cases sometimes do,[3] or by pointing to some business justification for restructuring *when it did*) speaks volumes as to the restructuring's primary purpose.

Though the Court agrees with Defendant that Plaintiff's actions raise gamesmanship concerns, the question is whether those concerns authorize the Court to pierce the pleadings and ignore what would otherwise be the jurisdictional impacts of Plaintiff's zero-hour restructuring efforts.  Unfortunately, and while a contrary result might be preferable as a matter of policy and practicality, the Court concludes that it lacks this authority.

Congress has enacted a statute instructing federal district courts to decline jurisdiction where a party improperly or collusively uses devices to *create* federal subject matter jurisdiction.  *See* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke

---

"does not yet have the reputation, credibility, and access to financing necessary for viability in the Colorado market," and that Plaintiff was restructured to include Pearson Air Colorado, Inc. as a member so that Pearson Air Colorado, Inc. "could capitalize on [Plaintiff's] already established goodwill, credit, and access to financing" and could "develop and provide marketing benefits to [Plaintiff] in the Colorado market while retaining a connection with the name and established business reputation of [Plaintiff]" (D. 7 at 12–13).  It is not clear to the Court why any of these objectives *require* Plaintiff Air Colorado, Inc. to be a member of Plaintiff, as opposed to a sister affiliate, for example.

[3] *See Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:06-CV-0480-D, 2006 WL 1627922, at *2 (N.D. Tex. June 8, 2006) (relying on counsel's representations that the plaintiff restructured itself before it learned of the prospective jurisdictional effects of that restructuring).

6

the jurisdiction of such court."). But it has not enacted a parallel statute permitting courts to exercise jurisdiction where a party has used similar devices to *destroy* federal jurisdiction. *See BBSR, LLC v. Anheuser-Busch, LLC*, No. 3:22CV544 (JBA), 2023 WL 21820, at *5 (D. Conn. Jan. 3, 2023) (discussing authorities acknowledging the absence of a § 1359 analogue); *HDNet MMA 2008 LLC v. Zuffa, LLC*, No. 3:08-CV-0442-G, 2008 WL 958067, at *3 (N.D. Tex. Apr. 9, 2008) ("[T]here is no statute that expressly inhibits the use of devices to defeat federal jurisdiction."). Accordingly, the Court would appear to lack any direct statutory authority for disregarding Plaintiff's diversity-destroying restructuring efforts.

No binding judicial authority permits the Court to do so either. In fact, the United States Supreme Court has historically instructed that lower federal courts are not to interrogate parties' uses of diversity-destroying devices. In *Provident Savings Life Assurance Society v. Ford*, the Supreme Court expressly noted that federal courts may not assume jurisdiction in the face of certain diversity-destroying claims assignments:

> Where an assignment of a cause of action is colorably made for the purpose of giving jurisdiction to the United States court, the fifth section of the act of congress of March 3, 1875, relating to removals, has now given to the circuit courts power to dismiss or remand the cause at any time when the fact is made to appear. And by analogy to this law, it may, perhaps, be a good defense to an action in a state court to show that a colorable assignment has been made to deprive the United States court of jurisdiction; but, as before said, *it would be a defense to the action, and not a ground of removing that cause into the federal court*. We think, therefore, the second ground of removal was also insufficient.

114 U.S. 635, 641 (1885) (emphasis added). One year later, in *Oakley v. Goodnow*, the Supreme Court reaffirmed this principle, stating, "no authority has as yet been given [federal courts] to take jurisdiction of a case by removal from a State court when a colorable assignment has been made

7

to prevent such a removal." 118 U.S. 43, 45 (1886). Neither of these cases "has ever been *expressly* overruled or superseded." *Plush Lounge Las Vegas, LLC v. Lalji*, No. CV 08-8394-GW (JTLx), 2010 WL 5094238, at *3 (C.D. Cal. Dec. 7, 2010) (emphasis in original).

Both the Fifth Circuit and the Ninth Circuit have, however, recognized that courts may disregard an extremely limited subset of diversity-destroying transactions. In *Grassi v. Ciba-Geigy, Ltd.*, the Fifth Circuit recognized that *Provident* and its progeny remained precedential, but construed them to apply only to *partial*, as opposed to *complete* claims assignments. 894 F.2d 181, 184–85 (5th Cir.1990). The *Grassi* court then held that district courts may assess the motives underlying partial assignments of claims (and, if such assignments were collusive and intended to destroy diversity, disregard them). *Id.* at 185. And in *Attorneys Trust v. Videotape Computer Prod., Inc.*, the Ninth Circuit—citing straw party concerns—similarly recognized that the motives underlying diversity-destroying *partial* assignments may be scrutinized. 93 F.3d 593, 598 (9th Cir. 1996).

Notably, the case at bar does not involve a partial assignment of a litigation claim—the type of transaction at issue in *Grassi* and *Attorneys Trust*. Plaintiff has directed the Court to no case of any kind (whether binding or persuasive) extending *Grassi* or *Attorneys Trust* to disregard the kind of diversity-destroying device Plaintiff is using here (i.e., restructuring a contractual entity

8

to include a non-diverse member).[4]  The Court has located no such case either.[5]  And, so far as this Court is aware, the courts that have considered this issue have generally and expressly *declined* to apply *Grassi* and *Attorneys Trust* in the restructuring context, because restructuring and claims assignments are distinguishable transactions.  As one district court observed:

> Even if the Court were to accept the premise that the Court may look behind the collusive assignment of a claim in order to find diversity (and it may well be true that the *Provident* line of cases is obsolete in that limited scenario), it would require a quantum leap in logic to conclude from this that it can examine the motivation behind the assignment of an interest in an LLC (or the addition of a diversity destroying new member into the LLC).  All the two scenarios really have in common is the word "assignment."  In the "assignment" cases cited by Defendants, the jurisdictional question is answered by deciding who is the real party in interest.  *See, e.g., Attorneys Trust*, 93 F.3d at 599.  Here, there is no question that Plush Lounge is the proper party.  It is not obvious that any of the cases cited by Defendants even support their argument that Plaintiff's motivation in adding PLLV Holdings, LLC, as a managing member is relevant to the determination whether diversity jurisdiction exists.

*Lalji*, 2010 WL 5094238, at *4.[6]  Even to the extent that claims assignments and restructuring are

---

[4] The factually on-point cases that Defendant cites generally undercut its argument.  In *Spillers v. Chevron U.S.A. Inc.*, No. CIV.A. 11-2163, 2012 WL 3202968, at *10 (W.D. La. Aug. 2, 2012), the court expressly "decline[d] to extend *Grassi*."  Similarly, the court in *HDNet*, 2008 WL 958067, at *4 distinguished *Grassi* on the basis that *Grassi* involved a partial assignment (as opposed to the creation of a new entity).  In *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, No. 3:06-CV-0480-D, 2006 WL 1627922, at *2 (N.D. Tex. June 8, 2006), the court at least purported to apply *Grassi,* but engaged in no reasoned analysis for doing so (and ultimately did not disregard the plaintiff's questioned restructuring).  Other of Defendant's cases address fundamentally different situations.  For instance, *Bugsby Prop. LLC v. Alexandria Real Est. Equities, Inc.*, No. 19-CV-9290 (VEC), 2020 WL 1974147 (S.D.N.Y. Apr. 24, 2020) and *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.*, 282 F.R.D. 146 (E.D. La. 2012) addressed purportedly collusive efforts to *create* diversity jurisdiction, a fact pattern directly governed by statute.

[5] Other courts have acknowledged this lack of authority.  *See, e.g.*, *Equant, Inc. v. Unified 2020 Realty Partners, L.P.*, No. 3:11-CV-0838-D, 2012 WL 1033644, at *2 (N.D. Tex. Mar. 27, 2012) ("Moreover, the parties do not cite, and the court has not located, any cases that have found collusion for the principal purpose of defeating diversity jurisdiction based on a change in the ownership of a current or potential party to litigation.").

[6] Several other courts have acknowledged that *Grassi's* and *Attorneys Trust's* holdings were cabined to the partial assignment context.  *See, e.g., BBSR*, 2023 WL 21820, at *3 n.4; *Go Computer Inc. v. Microsoft Corp.*, No. C 05-03356 JSW, 2005 WL 3113068, at *2 (N.D. Cal. Nov. 21, 2005).

analogous, restructuring is potentially more similar to unreviewable *complete* assignments than it is to potentially reviewable *partial* ones, in that it does not add a distinct party without a bona fide interest to the litigation.  *See BBSR*, 2023 WL 21820, at *4 (drawing the theme from binding precedent that the primary question driving whether the use of devices is permissible is whether the *litigants* are true parties in interest); *cf. HDNet*, 2008 WL 958067, at *4 ("The instant case does not involve an assignment of claims; instead of an assignment, the plaintiff entity was created before any claims accrued . . . .  The plaintiff argues, though, that to the extent this case could be classified as an 'assignment,' it resembles a complete assignment.  The court agrees." (citation omitted)).

Defendant essentially hangs its hat on *Grassi*, arguing that the Court should apply *Grassi*, interrogate the motives underlying Plaintiff's creation of Pearson Air Colorado, Inc., and ultimately disregard that entity's existence so that it may assume jurisdiction.[7]  There may be compelling reasons for applying *Grassi* here.  Arguably, restructuring on the eve of litigation to add a nondiverse equityholder implicates the same fundamental concern that underlies *Grassi* and *Attorneys Trust*—what is functionally a diverse plaintiff remains the real party in interest, and can capitalize on the local biases diversity jurisdiction is designed to mitigate.  But the bottom line is that no court has yet made this leap, and the Court will not do so here in the absence of clear

---

[7] Defendant also argues that Plaintiff's Texas declaratory-judgment action is an improper anticipatory suit.  As the Court understands it, Defendant views the potentially anticipatory nature of Plaintiff's lawsuit as evidence of its scheme to litigate in its preferred forum (and supporting the notion that Plaintiff created Pearson Air Colorado, Inc. primarily to avoid litigating in federal court).  Because the Court does not find that it is authorized to consider Plaintiff's motives, this argument does not appear relevant.  To the extent Defendant's anticipatory-suit contentions are a freestanding argument against remand, the Court rejects that notion.

statutory or precedential direction to the contrary, and where it is obligated to resolve doubtful cases in favor of remand.[8]

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that this matter must be REMANDED to the 96th District Court in Tarrant County, Texas.[9]  It is FURTHER ORDERED that the parties are to bear their own fees and costs.  IT IS FURTHER ORDERED that the Clerk of the Court shall close this case.

DATED March 18, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge

---

[8] Even though it concludes that this matter is appropriately remanded, the Court does not find that an award of fees and costs is appropriate under 28 U.S.C. § 1447(c).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).  Here, the Court does not find that Defendant had an objectively unreasonable basis for seeking removal.  Defendant asserted a coherent argument supported by some authority for applying *Grassi*, a case that is binding on the court where the Motion to Remand was originally pending.  While the Court was not persuaded that *Grassi* applies on these facts, it nevertheless finds that Defendant's position was reasonable.

[9] This case is somewhat unusual in that it was transferred before the remand issue was addressed.  But in this posture, what is clear is that, if remand is appropriate, the Court may only remand to the state court in which the action was originally pending.  *See Nat'l Pension Corp., LLC v. Horter Inv. Mgmt., LLC*, No. 1:20-CV-86, 2020 WL 1502042, at *1 (S.D. Ohio Mar. 30, 2020) ("It is well-established law that the district court must remand the case only to the court from which it was removed and lacks authority to 'transfer' a case by remanding it to a different jurisdiction.").

11